IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

JAMISI JERMAINE CALLOWAY,

      Plaintiff,                    No. 1:05-CV-01284 ALA P

vs.

WARDEN, CSP CORCORAN, et at.,

      Defendants.               ORDER

_____/

      Plaintiff Jamisi Jermaine Calloway is a state prisoner proceeding *pro se*. Mr. Calloway filed a complaint on October 11, 2005, seeking relief pursuant to 42 U.S.C. § 1983.

      On November 16, 2005, Mr. Calloway filed a motion to proceed *in forma pauperis* pursuant to 28 U.S.C. § 1915(a). On March 3, 2007, findings and recommendations were entered recommending that Mr. Calloway's motion to proceed *in forma pauperis* be denied. On July 17, 2006, Mr. Calloway paid the filing fee in full.

**I**

      Pending before this Court is Mr. Calloway's motion to exclude his amended complaint. On March 13, 2006, Mr. Calloway filed a first amended complaint. On July, 18, 2006, the Court granted, *nunc pro tunc*, Mr. Calloway's motion to amend his complaint. On December 12, 2006, Mr. Calloway filed a motion to exclude the first amended complaint and to serve the defendants named in the original complaint. In his motion to exclude, Mr. Calloway explained: "I made a formal request to amend complaint which was a[n] error on my behalf. Instead of joining my

1  issues at C.M.F. California Medical Facility with the issues at Corcoran I & II Prisons, I would
2  just be filing my C.M.F. issues on another 1983 civil complaint form and dealing with both cases
3  separately." An amended or supplemental complaint generally supersedes the original
4  complaint. *Loux v. Rhay*, 375 F.2d 55, 57 (9th Cir. 1967); *see also* E.D. Local Rule 15-220.
5  However, Mr. Calloway's motion to exclude his first amended complaint is granted. The first
6  amended complaint is therefore stricken. *See* Docket No. 13. The original complaint filed on
7  October 11, 2005, is reinstated. *See* Docket No. 1.

## II

Mr. Calloway alleges in his complaint that his Constitutional rights were violated by officials of Corcoran State Prison. Mr. Calloway brings four claims, each of which concerns separate incidents, against twenty-six defendants.

Pursuant to 28 U.S.C. § 1915A(a), when the litigant is a prisoner, this Court must screen complaints brought against a governmental entity, or officer or employee of a governmental entity. The Court must dismiss the complaint if the claims contained in it, even when read broadly, are legally frivolous, malicious, fail to state a claim upon which relief may be granted, or seek money damages from a defendant who is immune from such relief. 28 U.S.C. § 1915(A)(b). A claim "is frivolous [if] it lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). "At this stage of the litigation, [this Court] must accept [plaintiff's] allegations as true." *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984). "A court may dismiss a complaint only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Id.*

"To sustain an action under section 1983, a plaintiff must show (1) that the conduct complained of was committed by a person acting under color of state law; and (2) that the conduct deprived the plaintiff of a federal constitutional or statutory right." *Hydrick v. Hunter*, 466 F.3d 676, 689 (9th Cr. 2006). This Court will examine each of Mr. Calloway's claims in his complaint to determine if they are sufficient under § 1915A.

**A**

2

Mr. Calloway's first claim is that prison officials wrongly accused him of possessing drugs and forced him to undergo a medical procedure involving an enema without his consent in violation of his Eighth Amendment rights. Compl., claim 1. Mr. Calloway also alleges that Lieutenant Kennedy and Sergeant Phillips retaliated against him for reporting the incident. Specifically, Mr. Calloway alleges: ". . . Sergeant Phillips gave no reasons for my removal [from my cell] and why I was being placed in the hole for my safety concerns in which I had no safety concerns until [after the enema incident]." Compl., claim 1 at 4.

The Eighth Amendment's prohibition of cruel and unusual punishments "'draw[s] its meaning from the evolving standards of decency that mark the progress of a maturing society,' and so admits of few absolute limitations." *Hudson v. McMillian*, 503 U.S. 1, 8 (1992) (holding that the use of excessive physical force against a prisoner may constitute cruel and unusual punishment even though the prisoner does not suffer serious injury) (citations omitted). "What is necessary to show sufficient harm for purposes of the Cruel and Unusual Punishments Clause depends upon the claim at issue . . . ." *Id.* "[D]eliberate indifference to medical needs amounts to an Eighth Amendment violation only if those needs are 'serious.'" *Id.* at 9 (citation omitted). With respect to excessive force claims, however, when "prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency always are violated," regardless of whether or not significant injury is evident. *Id.*; *see also Oliver v. Keller*, 289 F.3d 623, 628 (9th Cir. 2002) (explaining that the Eighth Amendment excessive force standard examines *de minimis* uses of force, not *de minimis* injuries).

In the instant case, Mr. Calloway alleges that Sergeant Montgomery ordered an enema procedure after an x-ray showed that Mr. Calloway's abdomen appeared "normal" and that he was not in possession of drugs. Compl., claim 1 at 3. Mr. Calloway has set forth allegations that Sergeant Montgomery used excessive force by maliciously ordering an unnecessary procedure, and, therefore, has established an Eighth Amendment claim. *See, e.g, Hudson*, 503 U.S. at 5-6 (explaining that the question of whether prison security measure to a particular incident inflicted cruel and unusual punishment depends on "whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing

1  harm") (citations omitted).  Mr. Calloway's allegations that Correctional Officers B. Babb and
2  R. Spears restrained him over a mop bucket while the procedure was being publically performed
3  are also sufficient to state a claim.  Mr. Calloway has set forth allegations that Correctional
4  Officers B. Babb and R. Spears were maliciously motivated to perform the procedure publically
5  instead of privately.  *See id.*  However, Mr. Calloway did not set forth any allegations that
6  Doctor Bhatt or L. Kappe acted maliciously or sadistically; thus, Mr. Calloway has failed to state
7  a cognizable claim against them.

8  Although Mr. Calloway fails to specify which Constitutional rights were violated when
9  he was allegedly retaliated against, the most likely basis is the First Amendment.  Allegations of
10 retaliation against a prisoner's First Amendment rights to speech may support a § 1983 claim.
11 *Rhodes v. Robinson*, 408 F.3d 559, 567 (9th Cir. 2005).  "Within the prison context, a viable
12 claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state
13 actor took some adverse action against an inmate (2) because of (3) that prisoner's protected
14 conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and
15 (5) the action did not reasonably advance a legitimate correctional goal."  *Id.* at 567-68; *see also*
16 *Soranno's Gasco, Inc. v. Morgan*, 874 F.2d 1310, 1314 (9th Cir. 1989) (explaining that a
17 plaintiff must plead facts which suggest "that the protected conduct was a 'substantial' or
18 'motivating' factor in the defendant's decision") (citation omitted).

19 Mr. Calloway fails to state a claim for retaliation.  He has not provided any allegations
20 that would demonstrate that retaliation, rather than a concern for his safety, was Sergeant
21 Phillips's substantial or motivating factor for moving him to the "hole."  Moreover, these
22 allegations are inconsistent with allegations Mr. Calloway makes later in his complaint that he
23 refused to be placed back in his original cell "because [he] was place[d] in the hole for safety
24 concerns."  Compl., claim 3 at 1.  Mr. Calloway also has failed to allege any personal
25 involvement by Lieutenant Kennedy, and, thus, has failed to state a claim against him as well.
26 *See, e.g., Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989) ("Liability under [§] 1983 arises
27 only upon a showing of personal participation by the defendant.").

28 **B**

In the second claim, Mr. Calloway alleges that District Attorney Ronald L. Calhoun brought charges against him for drug possession in retaliation for reporting the enema incident. Compl., claim 2 at 1. This claim fails. District attorneys are entitled to absolute immunity from civil suits for damages. *See Imbler v. Pachtman*, 424 U.S. 409, 418 (1976) (holding that state prosecuting attorney is entitled to prosecutorial immunity for civil liability in performing functions intimately associated with the judicial phase of the criminal process).

Mr. Calloway also alleges in his second claim that when he was transported to a hearing for the drug possession charges he had an altercation with Correctional Officers P. Tome and A. Pyle where they assaulted Mr. Calloway by hitting his head on the floor while he was handcuffed. Compl., claim 2 at 3. Mr. Calloway claims that Sergeant Rangel then pepper sprayed him. Compl., claim 2 at 4. Mr. Calloway further alleges that nurse R. Tyner, Correctional Officers R. Mobert, Scott, Mendoza, and Zavala interacted with him after the alleged attack, but "deliberately" failed to provide him medical treatment until later that day. Compl., claim 2 at 4-6. Although Mr. Calloway does not specify what Constitutional rights were violated, the most likely basis is excessive force and inadequate medical care in violation of the Eighth Amendment.

Mr. Calloway has stated a claim of excessive force against Correctional Officers P. Tome and A. Pyle and Sergeant Rangel. *See, e.g, Hudson*, 503 U.S. at 5 (explaining that the question of whether prison security measure to a particular incident inflicted cruel and unusual punishment depends on "whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm") (citations omitted).

Mr. Calloway, however, has failed to state a cognizable claim against the other defendants for inadequate medical care. A prisoner's claim of inadequate medical care does not constitute cruel and unusual punishment unless the mistreatment rises to the level of "deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). "[T]he deprivation alleged must be, objectively, 'sufficiently serious.'" *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (citations omitted). A prison official does not act in a deliberately indifferent

manner unless the official "knows of and disregards an excessive risk to inmate health or safety." *Id.* at 837. Mr. Calloway has not set forth specific facts regarding whether his injuries were sufficiently serious to require more prompt medical treatment than he had received or how nurse R. Tyner, or Correctional Officers R. Mobert, Scott, Mendoza, and Zavala deliberately denied him medical care.

Although the complaint is unclear, it appears that in the second claim Mr. Calloway makes two additional claims. First, he alleges that his hearing concerning the alleged assault was "held until over 60 days [which violated his] constitutional rights[,] 5th and 14th Amendment due process." Compl., claim 2 at 7. To the extent this is a claim, it fails because he has not alleged any personal involvement by any named defendant. *See Taylor*, 880 F.2d at 1045 ("Liability under [§] 1983 arises only upon a showing of personal participation by the defendant.").

Second, Mr. Calloway claims that he reported the alleged assault to Warden A.K. Scribner, who "did nothing." Compl, claim 3 at 7. This allegation fails to state a claim. The Ninth Circuit has "found supervisorial liability under § 1983 where the supervisor was personally involved in the constitutional deprivation or a sufficient causal connection exists between the supervisor's unlawful conduct and the constitutional violation." *Edgerly v. City & County of San Francisco*, 495 F.3d 645, 660 (9th Cir. 2007) (internal quotation marks omitted). "Thus, supervisors 'can be held liable for: 1) their own culpable action or inaction in the training, supervision, or control of subordinates; 2) their acquiescence in the constitutional deprivation of which a complaint is made; or 3) for conduct that showed a reckless or callous indifference to the rights of others.'" *Id.* (citations omitted). Mr. Calloway has failed to allege specific facts that demonstrate Warden Scribner personally participated in the alleged constitutional violations or caused the alleged constitutional violations through his individual actions. Mr. Calloway's allegations are conclusory and, thus, he fails to state a cognizable claim against Warden Scribner.

**C**

Mr. Calloway makes numerous allegations in his third claim.  First, Mr. Calloway alleges that Warden Scribner and Assistant Warden Stockton denied his request to transfer prisons.  Compl., claim 3 at 1, 4.  Second, Mr. Calloway alleges that Warden Scribner, Doctor M. Talisman, and Psychiatrist A. Syedud violated his due process rights when they moved him to administrative segregation on a "suicide watch for 90 days" without a hearing.  Compl., claim 3 at 2.  Third, Mr. Calloway alleges that Correctional Officer Leos knowingly placed him with a dangerous cellmate who attacked him.  Compl., claim 3 at 4-5.  Each of these allegations will be addressed below.

First, Mr. Calloway fails to state a cognizable claim against Warden Scribner and Assistant Warden Stockton that his constitutional rights were violated when his request to transfer was denied.  *See Olim v. Wakinekona*, 461 U.S. 238, 245 (1983)  (explaining that prisoners have no constitutional right to incarceration in a particular institution).

With respect to his due process claim, Mr. Calloway has also failed to state a cognizable claim against Warden Scribner, Doctor M. Talisman, and Psychiatrist A. Syedud.   A prisoner possesses a liberty interest under the due process clause when a change occurs in confinement that imposes an "'atypical and significant hardship . . . in relation to the ordinary incidents of prison life.'"  *Jackson v. Carey*, 353 F.3d 750, 755 (9th Cir. 2003) (citations omitted).  Mr. Calloway has not alleged any facts about the conditions in administrative segregation, and, thus, has failed to allege that his placement there subjected him to "atypical and significant hardship."  *See also May v. Baldwin*, 109 F.3d 557, 565 (9th Cir. 1997) (holding that a due process claim failed because a prisoner had no liberty interest in freedom from state action taken within sentence imposed and administrative segregation falls within the terms of confinement ordinarily contemplated by a sentence).

Mr. Calloway has failed to specify which Constitutional rights he alleges were violated when Correctional Officer Leos allegedly placed him with a dangerous cellmate.  He has, thus, failed to state a cognizable claim against him.

**D**

In the fourth claim, Mr. Calloway, who asserts that he needs dialysis care, alleges that

1  Doctor Chan failed "to give follow-up physicals on a monthly basis." Compl., claim 4 at 1. Mr.
2  Calloway also alleges that during one of his dialysis treatments he had an altercation with nurse
3  Erica Casanova. Because of the alleged altercation, Mr. Calloway claims: "Her [Ms.
4  Casanova's] actions caused me to be removed off the dialysis without a doctor order and . . . I
5  was sent back to the prison without treatment . . . Do [sic] to the miss treatment [sic] and
6  deliberate indifference to my serious medical needs I had to be rushed by ambulance to the
7  outside hospital because I had a mild stroke and life threaten[ing] high potassium and my blood
8  pressure was so low that they couldn't get a reading in which [they had to] hospitalize me."
9  Compl., claim 4 at 3. Mr. Calloway further alleges that Warden Scribner was "deliberately
10 indifferent [to his] serious medical needs by denying him monthly check ups by a kidney
11 specialist doctor and undermining [his] medication." Compl., claim 4 at 5.

12 　　　To establish a claim that inadequate medical care constitutes cruel and unusual
13 punishment, the mistreatment must rise to the level of "deliberate indifference to serious
14 medical needs." *Estelle,* 429 U.S. at 106. The prison official must act with a "sufficiently
15 culpable state of mind," which entails more than mere negligence, but less than conduct
16 undertaken for the very purpose of causing harm. *Farmer*, 511 U.S. at 837. A prison official
17 does not act in a deliberately indifferent manner unless the official "knows of and disregards an
18 excessive risk to inmate health or safety." *Id.*

19 　　　In applying this standard, the Ninth Circuit has held that before it can be said that a
20 prisoner's civil rights have been abridged, "the indifference to his medical needs must be
21 substantial. Mere 'indifference,' 'negligence,' or 'medical malpractice' will not support this
22 cause of action." *Broughton v. Cutter Labs.*, 622 F.2d 458, 460 (9th Cir. 1980) (citing *Estelle*,
23 429 U.S. at 105-06.) "While poor medical treatment will at a certain point rise to the level of a
24 constitutional violation, mere malpractice, or even gross negligence, does not suffice." *Wood v.*
25 *Housewright*, 900 F.2d 1332, 1334 (9th Cir. 1990) (holding no constitutional violation where a
26 medical pin in a prisoner's shoulder broke and there were days of delay in treating the injury) .

27 　　　Here, Mr. Calloway has failed to state a claim against Ms. Casanova because he has
28 failed to allege whether she is a prison official. *See, e.g., Estelle*, 429 U.S. at 104-05 (explaining

1   there could be an Eighth Amendment claim " whether the indifference [to serious medical needs]
2   is manifested by prison doctors . . . or by prison guards").  If Mr. Calloway chooses to amend
3   this claim, he is ordered to cite authority for the proposition that a claim for deliberate
4   indifference to medical treatment can be brought against a nurse.

5   Mr. Calloway has also failed to state a cognizable claim against Doctor Chan and Warden
6   Scribner.  Mr. Calloway must allege, with at least some degree of particularity, specific overt
7   acts which Doctor Chan and Warden Scribner engaged in that support his claims.  The
8   allegations must "'give the defendant fair notice of what the plaintiff's claim is and the grounds
9   upon which it rests.'"  *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512 (2002) (citations
10  omitted); *see also Sherman v. Yakahi*, 549 F.2d 1287, 1290 (9th Cir. 1977) (explaining that
11  conclusory allegations and citation to constitutional amendments are insufficient to state
12  cognizable claims for relief).  The only allegations pertaining to these defendants are so vague
13  and conclusory as not to provide fair notice of the basis of Mr. Calloway's claims against them.

**E**

In the caption, Mr. Calloway lists Gambro President Richard Turner, Gambro Health
Care Salma Clinic, and "Corcoran State Prison #1 & #2 S.A.T.F." as defendants.  However, Mr.
Calloway does not link these named defendants with any alleged act or omission.  There can be
no liability under § 1983 unless there is some affirmative link or connection between a
defendant's actions and the claimed constitutional deprivation.  *Taylor,* 880 F.2d at 1045.

Moreover, Mr. Calloway should note that prisons, as state agencies, are entitled to
Eleventh Amendment immunity from suit.  *See id.* (concluding that Nevada Department of
Prisons was a state agency entitled to Eleventh Amendment immunity).

///

Accordingly, IT IS HEREBY ORDERED that:

1. Plaintiff's claims against Doctor Bhatt, L. Kappe, Lieutenant Kennedy,
Sergeant Phillips, Assistant Warden Stockton, Warden A.K. Scribner, Ronald L. Calhoun, R.
Tyner, Correctional Officer R. Mobert, Correctional Officer Scott, Correctional Officer
Mendoza, Correctional Officer Zavala, Doctor M. Talisman, Psychiatrist A. Syedud,

9

1 | Correctional Officer Leos, Doctor Chan, Erica Casanova, Gambro President Richard Turner,
2 | Gambro Health Care Salma Clinic, and Corcoran State Prison #1 & #2 S.A.T.F. are dismissed
3 | for the reasons discussed above, with leave to file an amended complaint within thirty-five (35)
4 | days from the date of service of this Order.  Failure to file an amended complaint will result in
5 | these defendants being dismissed from this action.

       2. Upon filing an amended complaint or expiration of the time allowed therefor, the court will make further orders for service of process upon some or all of the defendants.

/////

DATED: November 26, 2007

                                                 /s/ Arthur L. Alarcón
                                                 UNITED STATES CIRCUIT  JUDGE
                                                 Sitting by Designation